1   | Mary E. Alexander (SBN: 104173)
2   | Gary W. Loftis (SBN: 235816)
    | Mary Alexander & Associates
3   | 44 Montgomery Street, Suite 1303
    | San Francisco, CA 94104
4   | Telephone: (415) 433-4440
    | Facsimile: ((415) 433-5440
5   |
6   | William B. Federman
    | FEDERMAN & SHERWOOD
7   | 120 N. Robinson, Suite 2720
    | Oklahoma City, OK   73102
8   | Telephone: (405) 235-1560
9   | Facsimile: (405) 239-2112

E-filing

10  | Attorneys for Plaintiff

11  |           UNITED STATES DISTRICT COURT
              NORTHERN DISTRICT OF CALIFORNIA
12  |

13  | WALTER HAMMOCK, derivatively on behalf of )   Case No.
    | Nominal Defendant, ELECTRONIC ARTS, INC.,  )
14  |                                            )   C 05 02009
15  |                  Plaintiff,                )
    |                                            )   VERIFIED SHAREHOLDER
16  | v.                                         )   DERIVATIVE COMPLAINT
    |                                            )
17  | M. RICHARD ASHER, WILLIAM J. BYRON,        )
    | LEONARD S. COLEMAN, , WARREN               )   JURY TRIAL DEMANDED
18  | JENSON, TIMOTHY MOTT, ROBERT W.            )
19  | PITTMAN, LAWRENCE F. PROBST, III, JOEL     )
    | L. LINZNER, BRUCE McMILLAN, NANCY L.       )
20  | SMITH, GERHARD FLORIN, DON A.              )
    | MATTRICK, STEPHEN BENE, and                )
21  | RUSSSELL J. RUEFF, JR.,                    )
22  |                                            )
    |                  Defendants,               )
23  |                                            )
24  | and                                        )
    |                                            )
25  | ELECTRONIC ARTS, INC.,                     )
26  |                                            )
    |                  Nominal Defendant.        )
27  |                                            )
28  |                                            )

29  |

COMPLAINT

Plaintiff, Walter Hammock (hereafter "Hammock" or "Plaintiff'), files this Verified Shareholder Derivative Complaint and alleges on information and belief, except as to those allegations that pertain to Plaintiff, which are alleged on personal knowledge, as follows:

## NATURE OF THE ACTION

1.      This is a federal class action on behalf of purchasers of the publicly traded securities of Electronic Arts, Inc. ("EA") between January 25, 2005, and March 21, 2005 (the "Relevant Period.")

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §1331(a)(2) as a Federal question exists.

3.      Venue is proper in this District pursuant to 28 U.S.C. §1391(a) in that many of the acts and the conduct constituting the violations of law complained of herein occurred in this District, and because Nominal Defendant EA maintains its principal executive offices in this District.

4.      In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

5.      Plaintiff is and was at all times relevant herein, an owner and holder of EA common stock.  Hammock is domiciled in the State of Texas.

6.      Nominal Defendant EA is a Delaware corporation that maintains its principal place of business at 209 Redwood Shores Parkway, Redwood City, CA 94065.

COMPLAINT

7.    Defendant M. Richard Asher ("Asher") was a Director during the relevant time for Nominal Defendant EA.

8.    Defendant William J. Byron ("Byron") was a Director during the relevant time for Nominal Defendant EA.

9.    Defendant Leonard S. Coleman ("Coleman") was a Director during the relevant time for Nominal Defendant EA.

10.    Defendant Warren Jenson ("Jenson") was, at all relevant times, the Company's Executive Vice President, Chief Financial and Administration Officer.

11.    Defendant Timothy Mott ("Mott") was a Director during the relevant time for Nominal Defendant EA.

12.    Defendant Robert W. Pittman ("Pittman") was a Director during the relevant time for Nominal Defendant EA.

13.    Defendant Lawrence F. Probst, III ("Probst") was, at all relevant times, the Company's Chairman of the Board and Chief Executive Officer.

14.    Defendant Joel L. Linzner ("Linzner") was a Senior Vice-President for the Company during the Relevant Period.

15.    Defendant Bruce McMillan ("McMillan") was an officer of the Company during the Relevant Period.

16.    Defendant Nancy Smith ("Smith") was an officer of the Company during the Relevant Period.

17.    Defendant Gerhard Florin ("Florin") was an officer of the Company during the Relevant Period.

COMPLAINT

18.     Defendant Don A. Mattrick ("Mattrick") was an officer of the Company during the Relevant Period.

19.     Defendant Stephen Bene ("Bene") was an officer of the Company during the Relevant Period.

20.     Defendant Russell J. Rueff, Jr. ("Rueff") was an officer of the Company during the Relevant Period.

21.     Defendants Asher, Byron, Linzner, Probst, Jenson, McMillan, Smith, Florin, Mattrick, Bene and Russell are collectively referred to hereinafter as the "Individual Defendants."   The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of EA's quarterly reports, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, i.e., the market.   Each Individual Defendant was provided with copies of the Company's reports and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to material non-public information available to them but not to the public, each of these Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public and that the positive representations which were being made were then materially false and misleading. The Individual Defendants are liable for the false statements pled herein, as those statements were each "group-published" information, the result of the collective actions of the Individual Defendants.

22.     Defendants Asher, Byron, Coleman, Mott, Pittman and Probst are collectively referred to hereafter as the "Director Defendants."  The Director Defendants, because of their

positions with the Company, possessed the power and authority to control the contents of EA's quarterly reports, press releases and presentations to security analysts, money and portfolio managers and institutional investors, i.e., the market.  Each Director Defendant was provided with copies of the Company's reports and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions, and access to material non-public information available to them, but not to the public, each of the Director Defendants knew that the adverse facts specified herein had not been disclosed and were being concealed from the public.  The positive representations which were then being made were materially false and misleading.  The Director Defendants are liable for the false statements pled herein, as those statements where each "group" published information, the result of the collective actions of the Director Defendants.

## DUTIES OF THE INDIVIDUAL DEFENDANTS

23.     By reason of their positions as officers, directors and/or fiduciaries of EA and because of their ability to control the business and corporate affairs of EA, the Individual and Director Defendants owed EA and its shareholders fiduciary obligations of trust, loyalty, good faith and due care, and were and are required to use their utmost ability to control and manage EA in a fair, just, honest and equitable manner.  The Individual and Director Defendants were and are required to act in furtherance of the best interests of EA and its shareholders so as to benefit all shareholders equally and not in furtherance of their personal interest or benefit.

24.     Each director and officer of the Company owes to EA and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, and the highest obligations

COMPLAINT

of fair dealing.  In addition, as officers and/or directors of a publicly held company, the Individual and Director Defendants had a duty to promptly disseminate accurate and truthful information with regard to the Company's revenue, margins, operations, performance, management, projections and forecasts so that the market price of the Company's stock would be based on truthful and accurate information.

25.   The Individual and Director Defendants, because of their positions of control and authority as directors and/or officers of EA, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein, as well as the contents of the various public statements issued by the Company.  Because of their advisory, executive, managerial and directorial positions with EA, the Individual and Director Defendants had access to adverse non-public information about the financial condition, operations, and improper representations of EA.

26.   At all times relevant hereto, the Individual and Director Defendants were the agent of each other and of EA, and were at all times acting within the course and scope of such agency.

27.   To discharge their duties, the officers and directors of EA were required to exercise reasonable and prudent supervision over the management, policies, practices and controls of the financial affairs of the Company.  By virtue of such duties, the officers and directors of EA were required to, among other things:

(a)   Refrain from acting upon material inside corporate information to benefit themselves;

COMPLAINT

(b)  Ensure that the Company complied with its legal obligations and requirements, including acting only within the scope of its legal authority and disseminating truthful and accurate statements to the SEC and the investing public;

(c)  Conduct the affairs of the Company in an efficient, business-like manner so as to make it possible to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock;

(d)  Properly and accurately guide investors and analysts as to the true financial condition of the Company at any given time, including making accurate statements about the Company's financial results and prospects, and ensuring that the Company maintained an adequate system of financial controls such that the Company's financial reporting would be true and accurate at all times;

(e)  Remain informed as to how EA conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, to make reasonable inquiry in connection therewith, and to take steps to correct such conditions or practices and make such disclosures as necessary to comply with federal and state securities laws; and

(f)  Ensure that the Company was operated in a diligent, honest and prudent manner in compliance with all applicable federal, state and local laws, rules and regulations.

28.  The Individual and Director Defendants, by virtue of their position as a director and/or officer, owed to the Company and to its shareholders the fiduciary duties of loyalty, good faith and the exercise of due care and diligence in the management and administration of the affairs of the Company, as well as in the use and preservation of its property and assets. The conduct of the Individual and Director Defendants complained of herein involves a

COMPLAINT

knowing and culpable violation of their obligations as directors and officers of EA, the absence of good faith on their part, and a reckless disregard for their duties to the Company and its shareholders that the Individual and Director Defendants were aware or should have been aware posed a risk of serious injury to the Company.

29.    The Individual and Director Defendants breached their duties of loyalty and good faith by allowing the other Defendants to cause or by themselves causing the Company to misrepresent its condition and business prospects, as detailed herein *infra*, and by failing to prevent the Defendants from taking such illegal actions.   In addition, as a result of the Individual and Director Defendants' illegal actions and course of conduct during the Relevant Period, the Company is now the subject of several class action law suits that allege violations of federal securities laws.   As a result, EA has expended and will continue to expend significant sums of money.  Such expenditures include, but are not limited to:

(a)    Costs incurred to carry out internal investigations, including legal fees paid to outside counsel; and

(b)    Costs incurred in investigating and defending EA and certain officers in the class actions, plus potentially millions of dollars in settlements or to satisfy an adverse judgment.

30.    Moreover, these actions have irreparably damaged EA's corporate image and goodwill.  For at least the foreseeable future, EA will suffer from what is known as the "liar's discount," a term applied to the stocks of companies who have been implicated in illegal behavior and have misled the investing public, such that EA's ability to raise equity capital or debt on favorable terms in the future is now impaired.

COMPLAINT

## SUBSTANTIVE ALLEGATIONS

### Background

31.   EA develops, markets, publishes and distributes interactive software games that are playable by consumers on platforms, including home videogame machines, such as the Sony PlayStation 2, Microsoft Xbox, Nintendo GameCube and Sony PlayStation consoles; personal computers (PCs); handheld game machines, such as the Game Boy Advance, and online, over the Internet and other online networks. The products designed to play on consoles and handhelds, are published under license from the manufacturers of these platforms, such as Sony for the PlayStation and PlayStation 2, Microsoft for the Xbox and Nintendo for the Nintendo GameCube and Game Boy Advance. The Company pays a fee to the console manufacturers for the right to publish products on their platforms. EA invests in the creation of software tools that it uses in product development and to convert products from one platform to another.

### Materially False and Misleading
### Statements Issued During the Relevant Period

32.   The Relevant Period starts on January 25, 2005. At that time, EA in a press release, issued the following guidance for fiscal year ending March 31, 2005:

"We expect calendar 2005 to be a defining year," said Warren Jenson, Chief Financial and Administrative Officer. "While the year ahead will certainly be a year of investment for EA, we expect to see growth through new exciting platforms, a rich slate of great entertainment and further globalization of our business."

Fiscal Year Expectations - Ending March 31, 2005

Net revenue is expected to be between $3.275 and $3.325 billion - as compared to $2.957 billion for fiscal 2004.

Non-GAAP diluted earnings per share are expected to be between $1.90 and $1.95 - as compared to $1.84 for fiscal 2004. This range does not factor in eight

COMPLAINT

cents of estimated charges related principally to our acquisition of Criterion Software and tender offer for Digital Illusions C.E.

GAAP diluted earnings per share are expected to be between $1.82 and $1.87 - as compared to $1.87 for fiscal 2004.

33.    Also on January 25, 2005, EA held a conference call with investors and analysts. During the call, EA reaffirmed its previously issued guidance:

> Guidance [defendant Jenson] 1. Industry Outlook: 1. Interactive Media Industry: ERTS expects to see continued strength in current generation hardware sales. The Company believes there's a lot of life left in the current generation. 2. Sony has not yet hit its stride with the new PS2, and ERTS is still at $149 on both the Xbox and PlayStation 2.   ERTS expects to see continued strong console demand.   2. Steady declines in overall current generation software pricing. There has been little in the way of price degradation in the top 20 titles over the past four years.   ERTS believes consumers are willing to pay premium prices for premium titles. 3. Expects to see topline growth.  The NDS and PSP should expand the global segment considerably in 2005.   Providing the hardware manufacturers can deliver the product, the NDS and PSP are expected to likely more than offset any revenue declines associated with current generation consoles for the PC. 4. Globalization is ready for Act II.  Europe will continue to expand, markets in Asia will continue to grow rapidly, and online technology will begin to open the markets of India, Eastern Europe, and Russia. Globalization will also begin to impact the way ERTS builds games.   5. Consolidation. With change in transition will come some level of consolidation and possibly attrition.  Calendar 2005 Focus: ERTS is focused on expanding global leadership position and believes that this is the year in which it will lay the foundation for the next five years of the Co.'s performance and advantage.  To do so, ERTS is focused on the following: Making the necessary, investments to win on next generation platforms.  In this regard, ERTS is well underway.  To win in mobility.  ERTS expects to have a strong lineup on both the NDS and PSP. 2. The Co. also expects to build its cell phone game production capability. Further strengthening of the Co.'s global hand, in both Europe and in Asia. Building increasingly scalable and cost effective global development solutions for current and next generation platforms, including handhelds and cell phones. ERTS expects to have acquisition opportunities.  The Co. does not intend to alter the discipline of its acquisition screen.  Believes there will be opportunities and expects to be active participants. 3. Ubi Soft:    ERTS wants to keep all its options open.  Expects that, if anything were to happen, it would happen with the full cooperation of Ubi Soft.  If anything were to happen, ERTS will not overpay.  Ubi Soft shares are currently trading at close to 100% premium to the 120-day avg. before the Company's announcement. ERTS purchased its interest before this run up in stock price, at just under EUR20 per share.  The Company is prepared to be a long-term minority shareholder. 4. Market Outlook:  In North

COMPLAINT

America, expects the following hardware unit sales: Consoles = between 10-12m units. 2. Handhelds = between 11.5-13.5m units. In Europe, expects the following hardware unit sales: Consoles = between 9-11m units. Handhelds = between 7.5-9.5m units. In North America, expects growth in overall software sales to be between flat to up 5%. Console = down 6-10%. Handhelds = up 70-85%. PC = down 5-10%. In Europe, expects growth in overall software sales to be between flat and up 5%. Consoles = down 6-10%. Handhelds = up 90-110%. PC = flat to down 5%. 5. Full-Year Guidance: Expects revenue to be between $3.275-3.325b vs. $2.957b for FY04. 2. Non-GAAP diluted EPS to be between $1.90-1.95 vs. $1.84 for the prior year. This range does not factor in $0.08 of estimated charges related principally to acquisition of Criterion Software and the tender for Digital Illusions. GAAP diluted EPS to be between $1.82-1.87 vs. $1.87 for the prior year. These expected results also include the projected impact of the Company's share repurchase program. 6. 4Q05 Guidance: Expects to ship 26 SKUs vs. 11 a year ago. Expects to ship the following titles in 4Q05: MVP Baseball 2005 on four platforms. Champions League Football on four platforms. FIFA STREET on three platforms. Fight Night 2 on three platforms. NASCAR SimRacing on the PC. NBA STREET Vol. III on three platforms. Rugby 2005 on three platforms. The Sims 2: University Expansion Pack. Need for Speed Underground on the PSP. Tiger Woods PGA Tour on the PSP. FIFA 2005 on the PSP. NFL STREET 2 on the PSP. Expects Medal of Honor IV and Battlefield 2 to be shipped in 1Q06.

34.     Additionally, the Individual Defendants stated:

**Q.** Looking into 2005, how should we think about the performance of ERTS on a revenue basis relative to what you are talking about With the market, if we look at the platforms? Are there anomalies to your release schedule that would suggest that your growth rates might be different on a per platform basis than the macro numbers you were talking about? (Edward Williams - Harris Nesbitt)

**A.** (Warren Jenson) We're not going to get into our guidance until the next qtr., but I can probably add a little more clarity than we have in the past, as we've started into our planning process. So, where we are today is, we spent the last month doing a lot of work with our divisions globally, looking at the markets, looking at our expense base, and also looking at our SKU plant. And if I were to say where we are today relative to three months ago, we feel pretty dam good about topline growth next year. Now, at this point, we're working through all the expense side, and that will be tighter given the investments that we feel are so pivotal for our long-term strength. But, on the growth rate side, as I mentioned, we intend to be the leader on next gen consoles. We want to be the leader in mobility. And third, we're going to continue to produce in a strong way for current gen consoles. And then, I guess that makes -- finally, one longer terur point, because I think it's so pivotal, is the investments we are making today in calendar 2004, our FY005 and FY06, are about the long term. The investments we've made with the NFL and ESPN is about building long-term strength and

securing our long-term future. And we think we have done a lot of that this qtr. through the strategic moves. Just as those were important in lowering our overall long-term discount rate, the moves we're making to build scalability into our studios and to win in these platforms, while expensive today, are all about helping us to continue to build the strength of our long-teen future.

A. (Larry Probst) We don't expect to see blockbuster titles like San Andreas or Halo 2 in the market, in calendar 4Q of 2005, and that potentially presents the opportunity for us to move our market share in a positive direction.

35.   On January 28, 2005, Defendant Jenson sold 91,700 shares for gross proceeds totaling $5,701,906.00.

36.   Additionally, on January 31, 2005, Defendant Jenson sold 108,300 shares for gross proceeds totaling $6,812,394.90.   As such, during the Relevant Period, Defendant Jenson's combined sales amounted to 200,000 shares sold for gross proceeds totaling $12,514,300.90.

37.   Also on January 31, 2005, Defendant Probst sold 100,000 shares for gross proceeds totaling $6,371,600.00.  Additionally, the Insider Defendants sold shares as set forth in the chart accompanying ¶46.

38.   The statements contained at 32-34 were materially false and misleading when made because Defendants failed to disclose or indicate the following: (1) that increased competition from its competitors was eroding EA market share; (2) that hardware shortages were material; (3) that EA continued to suffer from operating margin compression; and (4) that as a result of the above, the Company's statements about its financial performance were lacking in any reasonable basis when made.

### The Truth Begins to Emerge

39.   On March 21, 2005, after the market closed, EA issued a press release with the headline "Electronic Arts Updates Fiscal Year 2005 Estimates." Therein, the Company stated:

COMPLAINT

Electronic Arts (Nasdaq:ERTS) today announced revised estimates for the Company's fiscal year ending March 31, 2005.  The changes are primarily the result of lower than expected sales in both North America and in Europe.

The Company now expects fiscal year 2005 net revenue to be between $3.100 and $3.125 billion, as compared to the Company's previous estimate of between $3.275 and $3.325 billion.

GAAP diluted earnings per share are now expected to be between $1.62 and $1.64 -- as compared to the Company's previous estimate of $1.82 to $1.87.

Chairman and Chief Executive Officer.  "While our new releases are performing reasonably well, they have not been able to offset a significant falloff in catalog sales."

40.    News of this shocked the market. On March 22, 2005, shares of EA fell $11.20 per share.

## UNDISCLOSED ADVERSE FACTS

41.    The market for EA's securities was open, well-developed and efficient at all relevant times.  As a result of these materially false and misleading statements and failures to disclose, EA's securities traded at artificially inflated prices during the Relevant Period.  Plaintiff purchased or otherwise acquired EA securities relying upon the integrity of the market price of EA's securities and market information relating to EA, and has been damaged thereby.

42.    During the Relevant Period, Defendants materially misled the investing public; thereby inflating the price of EA's securities, by publicly issuing false and misleading statements and omitting to disclose material facts necessary to make Defendants' statements, asset forth herein, not false and misleading. Said statements and omissions were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about the Company, its business and operations, as alleged herein.

43.    At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial

COMPLAINT

contributing cause of the damages sustained by Plaintiff.  As described herein, during the Relevant Period, Insider and Director Defendants made or caused to be made a series of materially false or misleading statements about EA's business, prospects and operations. These material misstatements and omissions had the cause and effect of creating in the market an unrealistically positive assessment of EA and its business, prospects and operations, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times. Insider and Director Defendants' materially false and misleading statements during the Relevant Period resulted in Plaintiff purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein.

## ADDITIONAL SCIENTER ALLEGATIONS

44.    As alleged herein, the Insider Defendants acted with scienter in that the Insider Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, the Insider Defendants, by virtue of their receipt of information reflecting the true facts regarding EA, their control over, and/or receipt and/or modification of EA allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning EA, participated in the fraudulent scheme alleged herein.

45.    Defendants knew and/or recklessly disregarded the falsity and misleading nature of the information which they caused to be disseminated to the investing public. The ongoing

COMPLAINT

fraudulent scheme described in this complaint could not have been perpetrated over a substantial period of time, as has occurred, without the knowledge and complicity of the personnel at the highest level of the Company, including the Individual Defendants.

46.   In addition to the 300,000 shares that Defendants Jenson and Probst sold during the Relevant Period, several other insiders took advantage of the fact that EA stock was trading at artificially inflated prices and disposed of their shares as evidenced by the chart below:

| Name | Date | Shares Sold | $ Gross Proceeds |
|------|------|-------------|------------------|
| Asher. M. Richard | 01/28/2005 | 23,600 | 1,479,325.00 |
| Bene, Stephen G. | 01/28/2005 | 8,000 | 493,600.00 |
| Byron, William J. | 01/28/2005 | 5,700 | 351,032.00 |
| Florin, Gerhard | 01/28/2005 | 20,000 | 1,252,000.00 |
| Florin, Gerhard | 01/31/2005 | 40,000 | 2,568,052.00 |
| Jensen, Warren | 01/28/2005 | 91,700 | 5,701,906.00 |
| Jenson, Warren | 01/31/2005 | 108,300 | 6,812.362.00 |
| Linzner, Joe | 02/02/2005 | 27,000 | 1,766,998.00 |
| Mattrick. Don A. | 01/28/2005 | 275,000 | 17,081,597.00 |
| McMillan, Bruce | 02/02/2005 | 75,000 | 4,922,970.00 |
| McMillan, Bruce | 02/01/2005 | 50,000 | 3,246,450.00 |
| Probst, III Lawrence F. | 01/31/2005 | 100,000 | 6,371,640.00 |
| Rueff, Jr., Russell J. | 01/28/2005 | 40,000 | 2,506,400.00 |
| Smith, Nancy L. | 01/28/2005 | 34,070 | 2,095,393.00 |
| Smith, Nancy L. | 01/31/2005 | 34,069 | 2,159,000.00 |
| | Total | 932,439 | $58,808,725.00 |

47.   The combined sales of the Insider Defendants totaled 932,439 shares for gross profits of $58,808,725.00.

## NO SAFE HARBOR

48.   The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this complaint.  Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made.  To the extent there were any forward-looking statements,

COMPLAINT

there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements, pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the particular speaker knew that the particular forward-looking statement was false, and/or the forward-looking statement was authorized and/or approved by an executive officer of EA who knew that those statements were false when made.

## DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

49.    Plaintiff incorporates by reference and re-alleges each and every allegation set forth in paragraphs one (1) through forty-eight (48) above, the same as set forth fully herein.

50.    Plaintiff brings this action derivatively in the right and for the benefit of EA, to redress injuries suffered and to be suffered by EA as a direct result of the breaches of fiduciary duty, abuse of control, gross mismanagement, waste of corporate assets, and unjust enrichment, as well as the aiding and abetting thereof, by the Individual Director Defendants. EA is named as a Nominal Defendant solely in a derivative capacity.  This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

51.    Plaintiff will adequately and fairly represent the interests of EA in enforcing and prosecuting its rights.

52.    Plaintiff was owner of the stock of EA during all times relevant to the Individual and Director Defendants' wrongful course of conduct alleged herein, and remains a shareholder of the Company.

COMPLAINT

53.   The current Board of Directors of EA consists of the following nine (9) individuals:  Defendants Asher, Byron, Coleman, Mott, Pittman and Probst, as well as non-parties Kusin, Maffei and Srere.  Plaintiff has not made any demand on the present Board of Directors of EA to institute this action because such a demand would be a futile, wasteful and useless act, particularly for the following reasons:

54.   As a result of their access to and review of internal corporate documents; conversations and connections with other corporate officers, employees and directors; and attendance at management and Board meetings, Director Defendants knew the adverse non-public information which made the representations made by the Company false and misleading.  While in possession of this material adverse non-public information regarding the Company, the following current members of the EA Board participated in the illegal insider selling and other transactions:

(a)   As set forth above, Defendants Asher, Byron and Probst benefited from the sale of 129,300 shares of EA stock for total proceeds exceeding $8,201,000.00.  Because Defendants Asher, Probst and Byron received a personal financial benefit from the insider trading transactions made during the Relevant Period, these Defendants are interested and any demand upon them is futile;

(b)   Prior to the Relevant Period, Defendants Coleman and Pittman were principals in Cendant Corporation.  During their time together at Cendant, these gentlemen developed strong personal and business ties to each other.  In fact, both Coleman and Pittman are still active board members of Cendant.  The past close business relationships between Coleman and Pittman call into question their willingness to take action against one another;

COMPLAINT

(c)     Defendant Mott is not considered an independent director by the Company pursuant to the NASDAQ Marketplace Rules.  As such, demand on Defendant Mott is futile;

(d)     A majority of EA's Board of Directors and senior management participated in the wrongs complained of herein.  EA's directors are not disinterested or independent due to the following:  Defendants Asher, Byron, Coleman, Mott, Pittman and Probst served on the Board during the Relevant Period.  Pursuant to their specific duties as Board members, each was charged with the management of the Company and to conduct its business affairs.  Each of the above-referenced Director Defendants breached the fiduciary duties that they owed to EA and its shareholders in that they failed to prevent and correct material misrepresentations made by the Company.   Further, Defendant Probst is not independent because of his stake in the financial performance of the Company because Probst is the Company's C.E.O;

(e)     Defendants Coleman and Pittman, because of their inter-related business, professional and personal relationships, have developed debilitating conflicts of interest that prevent the Board members of the Company from taking the necessary and proper action on behalf of the Company as requested herein;

(f)     The Director Defendants, as more fully detailed herein, participated in, approved and/or permitted the wrongs alleged herein to have occurred and participated in efforts to conceal or disguise those wrongs from EA's stockholders or recklessly and/or negligently disregarded the wrongs complained of herein, and are therefore not disinterested parties.  Each of the Director Defendants exhibited a sustained and systemic failure to fulfill

COMPLAINT

their fiduciary duties, which could not have been an exercise of good faith business judgment and amounted to gross negligence and extreme recklessness;

(g)    In order to bring this suit, a majority of the Directors of EA would be forced to sue themselves and persons with whom they have extensive business and personal entanglements, which they will not do, thereby excusing demand;

(h)    The acts complained of constitute violations of the fiduciary duties owed by EA's officers and directors and these acts are incapable of ratification;

(i)    Any suit by the current directors of EA to remedy these wrongs would likely expose the Individual and Director Defendants, and EA, to additional liability for violations of the securities laws that would result in civil actions being filed against Defendants Probst and Jenson, who are presently Defendants in securities class action lawsuits; thus, they are hopelessly conflicted in making any supposedly independent determination whether to sue themselves;

(j)    EA has been and will continue to be exposed to significant losses due to the wrongdoing complained of herein, yet the Individual and Director Defendants and current Board have not filed any lawsuits against themselves or others who were responsible for that wrongful conduct to attempt to recover for EA any part of the damages EA suffered and will suffer thereby or to recover the profits received by Asher through illegal insider trading;

(k)    If the current Directors were to bring this derivative action against themselves, they would thereby expose their own misconduct, which underlies allegations contained in class action complaints for violations of securities law, which admissions would impair their defense of the class actions and greatly increase the probability of their personal liability in the class actions, in an amount likely to be in excess of any insurance coverage

COMPLAINT

available to the Individual and/or Director Defendants. In essence, they would be forced to take positions contrary to the defenses they will likely assert in the securities class actions. This they will not do. Thus, demand is futile; and

(l)     If EA's current and past officers and directors are protected against personal liability for their acts of mismanagement, abuse of control and breach of fiduciary duty alleged in this Complaint by directors' and officers' liability insurance, they caused the Company to purchase that insurance for their protection with corporate funds, *i.e.*, monies belonging to the stockholders of EA. However, due to certain changes in the language of directors' and officers' liability insurance policies in the past few years, it is believed that the directors' and officers' liability insurance policies covering the Individual and Director Defendants in this case contain provisions that eliminate coverage for any action brought directly by EA against these Defendants, known as, *inter alia*, the "insured versus insured exclusion." As a result, if these directors were to sue themselves or certain of the officers of EA, there would be no directors' and officers' insurance protection and thus, this is a further reason why they will not bring such a suit. On the other hand, if the suit is brought derivatively, as this action is brought, such insurance coverage exists and will provide a basis for the Company to effectuate recovery. If there is no directors' and officers' liability insurance at all then the current directors will not cause EA to sue them, since they will face a large uninsured liability.

55.     Plaintiff has not made any demand on shareholders of EA to institute this action since such demand would be a futile and useless act for the following reasons:

(a)     EA is a publicly held company with approximately 307 million shares outstanding, and thousands of shareholders;

COMPLAINT

(b)     Making demand on such a number of shareholders would be impossible for Plaintiff, who has no way of finding out the names, addresses or phone numbers of all the shareholders; and

(c)     Making demand on all shareholders would force Plaintiff to incur huge expenses, assuming all shareholders could be individually identified.

## FIRST CAUSE OF ACTION

### Against Individual Defendants for Breach of Fiduciary Duties, For Insider Selling, and for Misappropriation of Information

56.     Plaintiff incorporates by reference and realleges each and every allegation set forth in paragraphs one (1) through fifty-five (55) above, the same as set forth fully herein.

57.     At the time of the stock sales set forth herein by the Individual Defendants, they knew the information described above and sold EA common stock on the basis of such information.

58.     The information described above was proprietary non-public information concerning the Company's financial condition and future business prospects.   It was a proprietary asset belonging to the Company, which the Individual Defendants used for their own benefit when they sold EA common stock.

59.     The Individual Defendants' sale of EA common stock while in possession and control of this material adverse non-public information was a breach of their fiduciary duties of loyalty and good faith.

60.     Since the use of the Company's proprietary information for their own gain constitutes a breach of Individual Defendants' fiduciary duties, the Company is entitled to the imposition of a constructive trust on any profits Solomon and Connelly obtained thereby.

COMPLAINT

## SECOND CAUSE OF ACTION

### Against Individual and Director Defendants
### for Breach of Fiduciary Duty

61.    Plaintiff incorporates by reference and re-alleges each and every allegation set forth in paragraphs one (1) through sixty (60) above, the same as set forth fully herein.

62.    The Individual and Director Defendants owed and owe EA fiduciary obligations.  By reason of their fiduciary relationships, the Individual and Director Defendants owed and owe EA the highest obligation of good faith, fair dealing, loyalty and due care.

63.    The Individual and Director Defendants, and each of them, violated and breached their fiduciary duties of care, loyalty, reasonable inquiry, oversight, good faith and supervision.

64.    The Individual and Director Defendants had actual or constructive knowledge that they had caused the Company to improperly misrepresent the financial condition and business prospects of the Company and failed to correct the Company's publicly reported financial results and guidance.  These actions could not have been a good faith exercise of prudent business judgment to protect and promote the Company's corporate interests.

65.    As a direct and proximate result of the Individual and Director Defendants' failure to perform their fiduciary obligations, EA has sustained significant damages.  As a result of the misconduct alleged herein, the Individual and Director Defendants are liable to the Company.

66.    Plaintiff, on behalf of EA, has no adequate remedy at law.

COMPLAINT

## THIRD CAUSE OF ACTION

### Against the Individual and Director Defendants
### for Abuse of Control

67.   Plaintiff incorporates by reference and re-alleges each and every allegation set forth in paragraphs one (1) through sixty-six (66) above, the same as set forth fully herein.

68.   The Individual and Director Defendants' misconduct alleged herein constituted an abuse of their ability to control and influence EA, for which they are legally responsible.

69.   As a direct and proximate result of the Individual and Director Defendants' abuse of control, EA has sustained significant damages.

70.   As a result of the misconduct alleged herein, the Individual and Director Defendants are liable to the Company.

71.   Plaintiff, on behalf of EA, has no adequate remedy at law.

## FOURTH CAUSE OF ACTION

### Against the Individual and Director Defendants
### for Gross Mismanagement

72.   Plaintiff incorporates by reference and re-alleges each and every allegation set forth in paragraphs one (1) through seventy-one (71) above, the same as set forth fully herein.

73.   By their actions alleged herein, the Individual and Director Defendants, either directly or through aiding and abetting, abandoned and abdicated their responsibilities and fiduciary duties with regard to prudently managing the assets and business of EA in a manner consistent with the operations of a publicly held corporation.

COMPLAINT

74.    As a direct and proximate result of the Individual and Director Defendants' gross mismanagement and breaches of duty alleged herein, EA has sustained significant damages in excess of tens of millions of dollars.

75.    As a result of the misconduct and breaches of duty alleged herein, the Individual and Director Defendants are liable to the Company.

76.    Plaintiff, on behalf of EA, has no adequate remedy at law.


### FIFTH CAUSE OF ACTION

**Against the Individual and Director Defendants
for Waste of Corporate Assets**

77.    Plaintiff incorporates by reference and re-alleges each and every allegation set forth in paragraphs one (1) through seventy-six (76) above, the same as set forth fully herein.

78.    As a result of the Individual and Director Defendants' improper conduct and by failing to properly consider the interests of the Company and its public shareholders by failing to conduct proper supervision, the Individual and Director Defendants have caused EA to waste valuable corporate assets by paying bonuses to certain of its executive officers and incur potentially millions of dollars of legal liability and/or legal costs to defend the Individual and Director Defendants' unlawful actions.

79.    As a result of the waste of corporate assets, the Individual and Director Defendants are liable to the Company.

80.    Plaintiff, on behalf of EA, has no adequate remedy at law.

COMPLAINT

## SIXTH CAUSE OF ACTION

### <u>Against the Individual Defendants for Unjust Enrichment</u>

81.   Plaintiff incorporates by reference and re-alleges each and every allegation set forth in paragraphs one (1) through eighty (80) above, the same as set forth fully herein.

82.   By their wrongful acts and omissions, the Individual Defendants were unjustly enriched at the expense of and to the detriment of EA.

83.   Plaintiff, as shareholder and representative of EA, seeks restitution from the Individual Defendants, and seeks an order of this Court disgorging all profits, benefits and other compensation obtained by the Individual Defendants from their wrongful conduct and fiduciary breaches.

## SEVENTH CAUSE OF ACTION

### <u>Against the Individual Defendants</u><br><u>Pursuant to 15 U.S.C. §7243 (SARBANES-OXLEY ACT)</u>

84.   Plaintiff incorporates by reference and re-alleges each and every allegation set forth in paragraphs one (1) through eighty-three (83) above, the same as set forth fully herein.

85.   Based upon the allegations made above and pursuant to 15 U.S.C. §7243, EA is entitled to reimbursement of all bonuses and other incentive-based or equity-based compensation paid to the Individual Defendants, as well as any profits realized from the sale of EA securities by them.

## EIGHTH CAUSE OF ACTION
### <u>Against the Insider Defendants for Violations of</u><br><u>California Corporations Code §25402</u>

86.   Plaintiff incorporates by reference and re-alleges each and every allegation contained above, as if though fully set forth herein.

COMPLAINT

87.    At the time of the stock sales set forth herein, the Insider Defendants knew the information described above, and sold Electronic Art common stock on the basis of such information in violation of California Corporation Code §25402.  The information described above was proprietary, non-public information concerning the Company.

88.    Pursuant to California Corporations Code §25502.5, the Insider Defendants are liable to Electronic Arts for damages in an amount up to three times the difference between the price at which that Electronic Arts common stock would have had at the time of the sale if the information known to defendants had been publicly disseminated prior to that time and a reasonable time had elapsed for the market to absorb the information.

89.    The Company is entitled to the imposition of a constructive trust on any profits the Insider Defendants obtained thereby.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

A.  Against the Individual and Director Defendants and in favor of the Company for the amount of damages sustained by the Company as a result of the Individual and Director Defendants' breaches of fiduciary duties, abuse of control, gross mismanagement, waste of corporate assets and unjust enrichment;

B.  Extraordinary equitable and/or injunctive relief as permitted by law, equity and state statutory provisions sued hereunder, including attaching, impounding, imposing a constructive trust on or otherwise restricting the proceeds of the Individual Defendants' trading activities or their other assets so as to ensure that Plaintiff has an effective remedy;

COMPLAINT

C.  Awarding to EA restitution from the Individual and Director Defendants, and each of them, and ordering disgorgement of all profits, benefits and other compensation obtained by these Defendants;

D.  Awarding to Plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

E.  Granting such other and further relief as the Court deems just and proper.


### JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.


Dated:  May 12, 2005

Respectfully submitted,

Mary E. Alexander, Esq.
Gary W. Loftus, Esq.
Mary Alexander & Associates

William B. Federman, Esq.
FEDERMAN & SHERWOOD

*Attorneys for Plaintiff*

COMPLAINT

## VERIFICATION

I, _Walter Hammock_ declare that I have reviewed the Shareholder Derivative Complaint ("Complaint") prepared on behalf of Electronic Arts, Inc., and I authorize its filing. I have reviewed the allegations made in the Complaint, and to those allegations of which I have personal knowledge, I believe those allegations to be true. As to those allegations of which I do not have personal knowledge, I rely on my counsel and their investigation and for that reason believe them to be true. I further declare that I am a current holder, and have been a holder, of Electronic Arts, Inc. common stock during the time period in which the wrongful conduct alleged and complained of in the Complaint was occurring.

_5-4-05_
Date